Filed 11/30/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| BYRON CRAIG MASON, | C075149 |
| Petitioner, | (Super. Ct. Nos. 62122495 & 62115351) |
| v. | |
| THE SUPERIOR COURT OF PLACER COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in prohibition or mandate.  Angus I. Saint-Evens, Judge.  (Retired judge of the Glenn Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Petition denied.

Leupp & Woodall, Thomas A. Leupp and Brad J. Poore for Petitioner.

No appearance for Respondent.

Kamala D. Harris, Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Daniel B. Bernstein, Supervising Deputy Attorney General, and Jennifer M. Poe, Deputy Attorney General, for Real Party in Interest.

1

The petitioner, Byron Craig Mason, seeks review of the denial of a Penal Code section 995[1] motion to set aside a grand jury indictment for the arson of forest land that caused great bodily injury. (§§ 451, 451, subd. (a).) The indictment arises out of a forest and grass fire ignited by sparks emitted from the explosion of a large firework. The firework, an illegal, aerial device, designed to shoot flares into the air, was thrown by petitioner into a large swimming hole, surrounded by cliffs, forest, and grassland, on a hot, July day in 2012. It floated briefly, then exploded, shooting sparks into the air, one of which landed in dry brush 27 feet above the hole, causing a fire that burned 2,650 acres of grassland and forest. Mason was initially charged by complaint with arson with enhanced penalties (§§ 451, subd. (a), 451, subd. (b)) and the lesser offense of unlawfully causing a fire (§ 452). The arson charges were dismissed at a preliminary hearing and Mason was held to answer on the lesser offense.

The People did not file an information in the Superior Court. They convened a grand jury and obtained an indictment charging Mason with arson that caused great bodily injury and the burning of an inhabited structure, relying on *People v. Atkins* (2001) 25 Cal.4th 76 (*Atkins*) and *In re V.V.* (2011) 51 Cal.4th 1020. The grand jury was instructed with a modified version of the standard CALCRIM instructions for an arson that causes great bodily injury and for an arson that causes an inhabited structure to burn. (§§ 451, subd. (a), 451, subd. (b); CALCRIM Nos. 1501, 1515, 240.)[2]

---

[1]   A reference to a section is to the Penal Code unless otherwise apparent from the context.

[2]   The instructions, except for the modification set out in the body of the opinion, followed the language of section 451 and the standard CALCRIM instruction for arson "that cause[s] great bodily injury." (CALCRIM No. 1501.) They stated:

   "Count One pertains to the violation of Penal Code section 451[, subdivision] (a), arson which causes great bodily injury. To prove that the accused is guilty of this crime

2

The instruction follows the language of CALCRIM No. 1501. The modification, which is not contained in the standard instruction, was apparently derived from *Atkins* and *In re V.V*. It provides that: "It is not required that [Mason] intended to break the law or intended to cause fire to forest land" and that "[a]n act cause[s] burning of forest land . . . if the burning was the direct, natural, and probable consequence of the act . . . ."[3] It is this modification which Mason challenges.

The grand jury returned an indictment charging the defendant with arson of an inhabited structure and arson that causes great bodily injury. The trial court denied Mason's motion to set aside the indictment (§ 995), and Mason sought review of the denial in this court. We granted review.

On review Mason challenges the modification to the standard instruction, and the grand jury evidence and procedures, claiming in part that the jury should have been instructed on the lesser offense of unlawful burning, and that an indictment does not lie where a complaint is not dismissed and the defendant is held to answer on another

the People must prove that; [¶] One, the accused set fire to or burned or caused the burning of forest land; [¶] Two, the accused acted willfully and maliciously; and [¶] Three, the fire caused great bodily injury to another person. [¶] To set fire to or burn means to damage or destroy with fire either all or part of something, no matter how small the part. [¶] Someone committed an act willfully when he or she does it willingly or on purpose. It is not required that he intended to break the law or intend[ed] to cause fire to forest land. [¶] Someone acts maliciously when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to defraud, annoy or injure someone else."

"Count Two pertains to the violation of Penal Code section 451[, subdivision] (b), arson which causes an inhabited structure to burn." Count two tracks the general instructions of Count one but adds: "A structure is any building. [¶] A structure is inhabited if someone lives there and either is present or has left but intends to return."

[3]   The instruction sounds in negligence. Negligence is defined in section 7, subdivision 2, as "a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns."

charge. He argues that arson requires an intent to burn a property, that when he set off the firework he was on an outing with his wife and children to a swimming hole, into which the firework was thrown and did not intend to cause a forest and grassland fire. He claims that his conduct amounted at most to the lesser offense of unlawfully causing a fire. (§ 452.)

The case turns on the culpable state for arson. The Supreme Court in *Atkins and In re V.V.* rejected intent to cause a structure to be burned as the meaning of willfully "caus[ing] to be burned" a structure, the language of the third proscribed act of section 451. It construed "caus[ing] to be burned" as "the act that causes" a structure to burn (*Atkins, supra*, 25 Cal.4th at p. 86; see also *In re V.V., supra*, 51 Cal.4th at p. 1027), and held that the mens rea for that form of arson is the "general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property." (*Atkins, supra*, 25 Cal.4th at p. 89; *In re V.V., supra*, 51 Cal.4th at p. 1029.)

Because we follow the Supreme Court's interpretation of "causes to be burned," we shall affirm the indictment on the ground the grand jury proceedings show there was probable cause to believe that the natural and highly probable consequence of the act of igniting and throwing a large, unlawful, aerial firework into the swimming hole in the middle of a forest and grassland in extreme fire conditions would be the burning of the forest land.[4]

### FACTS

On July 11, 2012, Mason went with his wife, his two children, his dog, and friends to the Shirttail Canyon swimming hole in Foresthill, California, for a party. The size of

---

[4] Although the instruction given the grand jury did not modify the term "probable" by the term "highly" to require that the fire must be a "highly probable" consequence of petitioner's conduct, on the facts of this case the error is harmless.

the swimming hole is approximately 50 feet by 72 feet and was surrounded by steep, granite, canyon walls and grassland and forest. Other people were present. It was a hot and dry day and people were swimming. It was fire season, and numerous fires had started in the surrounding area.

About 2:00 p.m. a member of Mason's party asked the swimmers to get out of the swimming hole. Mason then lit and threw an aerial firework into the middle of the swimming hole where it initially floated, then exploded, throwing flares in all directions and up in the air. A spark landed on a dry, grassy edge of the cliff about 27 feet above the surface of the pool and ignited the brush. The fire spread quickly and soon expanded beyond control. Mason unsuccessfully attempted to put out the fire, then left the area with his family and dog, saying "I'm sorry, I'm sorry." By the time a fire suppression crew arrived the fire had burned some 500 acres. A firefighter suffered a fracture of his right forearm when a large boulder hit his arm. In all, 2,650 acres of grassland and forest were destroyed.

A search of Mason's car revealed a box of various fireworks including aerial shells. The aerial shell was identified by Bryant Hart, an explosive enforcement officer with the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives, as the kind used in the incident and as illegal for use in California. An aerial shell is made of explosive material that shoots flares into the air that spray off stars that burn when falling through the air. The officer testified that a person who purchased the fireworks would know the nature of the fireworks purchased. He also testified that aerial shells had set fires before. Mason admitted that he had purchased and used the fireworks before.

Mason tearfully confessed to law enforcement and expressed great remorse for the consequences of his act.

5

# DISCUSSION

## I
## Mason Was Properly Indicted on the Arson Charge Pursuant to *In re V.V.*

### A. *The Prosecution May Proceed by an Indictment Charging Arson Notwithstanding That Mason Was Held to Answer for Unlawful Burning*

Mason argues that the prosecutor cannot proceed by indictment on the arson charges because he was held to answer on the unlawful burning charge, and the magistrate dismissed the arson counts but never dismissed the entire action. He argues that because he had been held to answer on the complaint, albeit not on the arson charges, the prosecution could not thereafter file an indictment. He argues that in such case the prosecution may either include the dismissed charges in an information pursuant to section 739, or make a motion in superior court to compel the magistrate to reinstate the dismissed charges pursuant to section 871.5, but these remedies are exclusive, and the prosecution may not proceed by way of indictment as it did in this case.[5] We disagree.

It has long been held that the prosecution may elect to start a prosecution over either by a new complaint or by indictment following a magistrate's order of dismissal. (*People v. Uhlemann* (1973) 9 Cal.3d 662, 664.) In this case the arson charges were

_____

[5]   Section 739 provides in pertinent part: "When a defendant has been examined and committed, as provided in Section 872, it shall be the duty of the district attorney of the county in which the offense is triable to file in the superior court of that county within 15 days after the commitment, an information against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed."

Section 871.5, subdivision (a) provides in pertinent part: "When an action is dismissed by a magistrate . . . or a portion thereof is dismissed . . . which may not be charged by information under Section 739, the prosecutor may make a motion in the superior court within 15 days to compel the magistrate to reinstate the complaint or a portion thereof and to reinstate the custodial status of the defendant under the same terms and conditions as when the defendant last appeared before the magistrate."

dismissed when the magistrate failed to hold Mason to answer. Section 871 provides that a magistrate shall order a complaint dismissed when it appears that no public offense has been committed. A failure to hold the defendant to answer is the equivalent of a section 871 dismissal of the arson charges in the complaint, even if there is no express order. (*People v. Superior Court* (*Martinez*) (1993) 19 Cal.App.4th 738, 744 (*Martinez*).) Thus, the magistrate's failure to hold Mason on the arson charges was the equivalent of a dismissal of those charges, and the prosecution could elect to proceed by way of indictment on those charges following the dismissal.

Mason argues that a dismissal under section 871 did not occur in this case, relying on *Martinez, supra*, 19 Cal.App.4th 738. *Martinez* does not support Mason's point. *Martinez* concerned whether a magistrate's order of dismissal under section 871 should be considered an order terminating the action within the meaning of section 1387, which provides a bar to the prosecution of an offense that has already been terminated twice. (*Martinez,* at pp. 743-744.) *Martinez* recognized that a section 871 order of dismissal may or may not be an order terminating the action within the meaning of section 1387, depending on the circumstances. (*Martinez,* at p. 744.) *Martinez* held that a magistrate's dismissal pursuant to section 871 does not terminate the action for purposes of section 1387 when a defendant is held to answer on a another transactionally related count and the People elect to proceed in the same case pursuant to section 739 by filing an information charging the defendant with both counts. (*Martinez,* at p. 745.) In such a case the People take the risk that the superior court would find the magistrate wrong in evaluating the charge, and the action is not terminated unless the superior court agrees with the magistrate's ruling. (*Ibid*.)

Here, the People did not proceed in the same action pursuant to section 739, but started the prosecution over by taking the case to the grand jury. The concern is not whether the magistrate's dismissal of the charged arson offenses was a termination of the action within the meaning of section 1387, but whether the magistrate's failure to hold

7

Mason on the arson charges constituted a dismissal of those charges pursuant to section 871. In that circumstance the failure to hold Mason was equivalent to a dismissal, and the People are free to start the prosecution over, either by complaint or by indictment. (*People v. Uhlemann, supra*, 9 Cal.3d at p. 664.)

The magistrate held Mason to answer on the lesser charge of unlawfully causing a fire (§ 452) following the preliminary hearing. Mason waived time for filing the information to April 2, 2013, the date of the arraignment on the information. On April 2, the prosecutor expressed her belief that there was no case pending, and defense counsel told the court he understood that the People were not going to file an information at that time. The court indicated there were no more court dates and Mason would be removed from supervised own recognizance release. Thus, after April 2, Mason was entitled to dismissal of the action for failure to file an information within the statutory time.

Mason argues there was no dismissal of the case because there was no formal order of dismissal, citing *People v. Ganger* (1950) 97 Cal.App.2d 11. However, *Ganger* simply stands for the unremarkable proposition that a prisoner who believes his imprisonment illegal may not simply escape, but must apply for release. In this case, where the time for filing an information had run, the prosecution represented that it was not planning to file an information, and Mason was not in custody or released on his own recognizance, the case was effectively dismissed, and the prosecution was free to start the prosecution over.

Moreover, the prosecution may proceed by way of indictment "even prior to dismissal of the complaint." (*People v. Carrington* (2009) 47 Cal.4th 145, 181.) In *Carrington* the defendant contended that the grand jury lacked jurisdiction to indict her because, at the time of the indictment, proceedings on a previous complaint had been stayed. The court disagreed, saying that "[a]fter a complaint has been filed, the prosecution is not prohibited from seeking an indictment on the same charges, even prior to dismissal of the complaint." (*Ibid*.) Thus, assuming the charge on the necessarily

8

included offense of unlawful burning was not dismissed, the prosecution could proceed by indictment prior to a formal dismissal of that charge.

Accordingly, the People were not prohibited from proceeding by indictment.

## B. *The Grand Jury Was Informed of the Dismissal of the Complaint Charging Arson*

Mason claims the prosecutor failed to inform the grand jury that he was not held to answer at the preliminary hearing on the charges of arson, that the charges were dismissed, and that he was held to answer only on the lesser offense of unlawful burning (§ 452). However, the grand jury was provided a transcript of the preliminary hearing and hence could have determined that the magistrate had dismissed the charge of arson and held Mason to answer only for the offense of unlawfully causing a fire. That is sufficient.

## C. *The Prosecution Was Not Required to Instruct the Jury Sua Sponte on the Offense of Unlawfully Causing a Fire*

Mason argues that it was instructional error to fail to advise the grand jury on the lesser included offense of unlawful burning, given the fact that three grand jurors inquired about the mens rea required for arson. One asked whether "stupidity and even extreme stupidity [can] negate malice." A second asked the source of the modified provision of the standard instruction that "willingly or on purpose . . . does not require that the intent was to cause a fire." A third stated that "I didn't see that [Mason] willfully and maliciously started a fire."

The People have no sua sponte duty to instruct the grand jury on a lesser included offense.[6] "[U]nless the grand jury specifically requests an instruction on lesser included

---

[6]  "[R]eckless [unlawful] burning is a lesser offense of arson . . . ." (*Atkins, supra*, 25 Cal.4th at p. 88; § 452.)  Reckless burning also is an included offense of arson because, disregarding the differences in mens rea and penalties, the offenses ("sets fire to or burns or causes to be burned") are identical. (§§ 451, 452; *In re Stonewall F.* (1989) 208

9

offenses, the prosecutor is not required to so instruct in every case." (*Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1036.) " 'Nevertheless, when members of the grand jury ask questions, [the prosecutor] owes them the duty of correct advice.' " (*Id*. at p. 1035, quoting *People v. Fisk* (1975) 50 Cal.App.3d 364, 369.)

It is Mason's implied argument that the statements given by the three grand jurors are equivalent to asking for an instruction on Mason's awareness of the consequences of throwing the firework into the swimming hole. That is not the case.

The three grand jurors plainly did not request an instruction at all, let alone "specifically request[] an instruction on lesser included offenses." (*Cummiskey v. Superior Court, supra*, 3 Cal.4th at p. 1036.) That was the case with the statement: "I didn't see that [Mason] willfully and maliciously started a fire." Nor was there a request for an instruction on unlawful burning by a juror's comments on the stupidity of Mason's conduct or by the juror's request for the "source" of the phrase "willingly or on purpose." Each comment showed concern about the meaning of the instruction on arson or its application to Mason. However, none of the comments suggested an instruction on the lesser offense of unlawful burning.

Thus, for the reason there was no such request, the prosecutor had no duty to respond.[7]

### D. *The People Did Not Misinstruct the Grand Jury on the Mens Rea for Arson*

Mason argues that the prosecution over-simplified the instruction for arson. (Petition p. 33) Mason's concern is the distinction between reckless burning (§ 452) and arson and the instruction's failure to make that distinction. Mason relies on *Stark v.*

---

Cal.App.3d 1054, 1060, fn. 4, disapproved on a different point in *Atkins, supra*, 25 Cal.4th at p. 90, fn. 5.)

[7]   Although a grand jury need not sua sponte consider the necessarily included offense of unlawful burning unless requested, a petit jury trying the petitioner for arson must, on request, consider the offense. (*People v. Solis* (2015) 232 Cal.App.4th 1108, 1116.)

*Superior Court* (2011) 52 Cal.4th 368, which held that it was error to misinstruct the grand jury on the mens rea required for a crime. The case is not in point because the mens rea instruction, as based on *Atkins* and *In re V.V.*, was correct.

The grand jury was given the standardized instruction on the elements of arson (CALCRIM No. 1515), with an additional sentence regarding intent and a separate instruction on natural and probable cause. (CALCRIM No. 240.) The instruction given for arson causing bodily injury, as is relevant to Mason's claim, provided: "To prove that the accused is guilty of this crime the People must prove that; [¶] One, the accused set fire to or burned or caused the burning of forest land; [¶] Two, the accused acted willfully and maliciously; and [¶] Three, the fire caused great bodily injury to another person. [¶] . . . [¶] Someone committed an act willfully when he or she does it willingly or on purpose. *It is not required that he intended to break the law or intend[ed] to cause fire to forest land.* [¶] Someone acts maliciously when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to defraud, annoy, or injure someone else." (Italics added.)

The italicized sentence does not appear in the standardized Judicial Council instructions (CALCRIM No. 1501). It nevertheless is a correct statement of the law as it appears in *Atkins*. The Supreme Court has explained the necessary intent for arson: " 'Because the offensive or dangerous character of the defendant's conduct, by virtue of its nature, contemplates such injury [(the burning of a relevant property)], a general criminal intent to commit the act suffices to establish the requisite mental state.' (Cf. *People v. Colantuono* [(1994)] 7 Cal.4th [206,] 215 [assault].) Thus, there must be a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property." (*Atkins*, *supra*, 25 Cal.4th at pp. 88-89.)

In *In re V.V.*, the juveniles threw ignited firecrackers into dry brush. The Supreme Court held that the juveniles "were not required to know or be subjectively aware that the

11

fire would be the probable consequence of their acts." (*In re V.V., supra*, 51 Cal.4th at p. 1030.) "A defendant may be guilty of arson if he or she acts with awareness of facts that would lead a reasonable person to realize that the direct, natural, and highly probable consequence of igniting and throwing a firecracker into dry brush would be the burning of the hillside." (*Ibid*.)

*Atkins* and *In re V.V.* make clear that a defendant need not intend to burn the relevant property. All that is needed is an intent to do an act, the direct, natural, and highly probable consequences of which is the burning of a relevant property (here forest land). The jury was so instructed. "An act caused burning of forest land . . . if the burning of forest land was the direct, natural, and probable consequence of the act and the burning of the forest land would not have happened without the act."

Mason argues that the act must be one that necessarily would cause a fire, as in *Atkins*, *supra*, 25 Cal.4th 76, and *In re V.V., supra*, 51 Cal.4th 1020. In *Atkins* the defendant poured accelerant on a pile of weeds and set fire to them. (*Atkins,* at pp. 79-80.) The weeds were in an area of heavy brush on a ranch during the dry season when fire conditions were high. (*Ibid*.) In *In re V.V.*, the minors ignited and threw firecrackers into dry brush on a hillside. (*Id*. at p. 1023.)

Although the actions of the defendants in *Atkins* and *In re V.V.* may have been actions that necessarily would have caused a fire, that is not the test, as is clearly set forth in both cases. All that is required is the intentional setting of a fire where the "direct, natural, and highly probable consequences would be the burning of the relevant structure or property." (*Atkins, supra*, 25 Cal.4th at p. 89; see also *In re V.V., supra*, 51 Cal.4th at p. 1029.) A necessary consequence is not required.

12

## II
## Sufficient Competent Evidence of Arson Was Tendered to the Grand Jury

### A. Expert Testimony Was Admissible

Mason challenges the qualifications of the prosecution's expert witness to testify on the subject of forest fires, wind conditions, and climate. However, the witness, Bryant Hart, an explosive enforcement officer with the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives, testified that he had extensive experience with taking apart and disposing of explosives and investigating fire and explosive scenes. He testified as an expert on fireworks, specifically dangerous illegal fireworks. He had participated in three or four major investigations where the type of firework at issue here had started fires. Although he was not an expert on forest fires, wind conditions, and climate, he did not testify on those subjects. Instead, when asked the probability that the firework would start a fire, he stated the probability was "very high" based on his training, knowledge, and experience, and that the probability would increase to "extremely high" in conditions of low humidity, extremely high temperatures, dry brush, and on a steep canyon wall. Hart testified he had seen an aerial shell, the type of firework involved here, start a fire at least 10 to 15 times.

Mason complains that Hart did not even go to the scene; however, the expert was entitled to rely on interviews, reports, and photographs of the scene of the fire on July 11, 2012. (Evid. Code, § 801.)[8] Hart testified he reviewed the evidence in the case. Specifically, he listened to Mason's interview, listened to statements from eyewitnesses,

---

[8] Evidence Code section 801 provides in part that an expert's opinion may be based on "matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion."

13

reviewed the photographs associated with the case, and reviewed the sheriff's report. Having done so, and with his expert knowledge of the type of firework involved, he was qualified to aver on the cause of the fire.

Mason argues Hart's testimony was not "assistive" to the grand jury because he did not have the expertise to testify regarding the likelihood that a firework thrown into the water would cause a forest fire. On the contrary, Hart testified he was familiar with illegal consumer fireworks, and how they are designed. He testified such fireworks are not designed to be exploded on water. He testified that if a firework were exploded on the surface of the water, all of the energy of the firework would be directed up into the air. He testified that the fireworks were water resistant, and that they would probably float for at least a little while. He had investigated another incident where fireworks burned while sitting in water.

Mason argues there was "massive danger" in allowing the expert to testify regarding the ultimate issue in the case, i.e., whether there was a high probability that the explosion of the firework would have started a fire. There is no merit to this argument. Evidence Code section 805 permits expert testimony on an ultimate issue in the case.

## B. *Relevant Evidence of Damage Was Not Prejudicial*

Mason argues that the grand jury was tendered prejudicial evidence that should have been excluded. In particular, he argues the prosecution erroneously solicited evidence of the number of acres burned, the number of firefighters used to fight the blaze, the amount and type of equipment the firefighters used to fight the fire, and the cost of fighting the fire. He claims the irrelevance and prejudice of this evidence prevented the grand jury from reaching a fair and impartial decision on the merits of the case.

Evidence received by a grand jury must be admissible at trial, and the People concede that the evidence of which Mason complains was irrelevant to the issues before

14

the grand jury.  (§ 939.6, subd. (b).)  We nevertheless conclude the admission of the evidence was harmless.

An indictment based solely on incompetent evidence must be set aside on a section 995 motion.  (*People v. Backus* (1979) 23 Cal.3d 360, 387.)  Where the indictment is not based solely on incompetent evidence, but the grand jury considered some incompetent evidence, the question is whether "the extent of inadmissible evidence, or the prosecutor's failure to advise of limited admissibility, or both, was such that it compromised the grand jury's ability to act independently and impartially in reaching its determination.  If the record of the proceedings shows that it is unreasonable to expect that the grand jury could have limited its consideration to the admissible and relevant evidence, defendant has been denied due process." (*People v. Superior Court* (*Mouchaourab*) (2000) 78 Cal.App.4th 403, 424.)

On the other hand, "the fact that evidence that would have been excluded at trial was received by the grand jury does not render the indictment void where sufficient competent evidence to support the indictment was received by the grand jury." (§ 939.6, subd. (b).)  Sufficient evidence to support the indictment is sufficient evidence to establish probable cause.  Probable cause " ' " 'means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused.  "Reasonable and probable" cause may exist although there may be some room for doubt.' " ' [Citation.]" (*Garcia v. Superior Court* (2009) 177 Cal.App.4th 803, 818, quoting *People v. Mower* (2002) 28 Cal.4th 457, 473.)

As we discuss in section III, *post*, there was sufficient evidence to establish probable cause that Mason was guilty of arson.  Evidence regarding the damage caused by the fire does not change this.

15

*C. Exclusion of Exculpatory Evidence*

Mason attacks the indictment on the ground the deputy district attorney failed to introduce "critical exculpatory evidence." The evidence omitted consisted of reports composed by a defense investigator after the investigator interviewed four people who had been at the swimming hole when the fire started. Mason claims the pertinent portions of the reports were the witnesses' statements that they saw him trying to put the fire out, and expressing shock and remorse about the fire.

Section 939.71 provides in part: "If the prosecutor is aware of exculpatory evidence, the prosecutor shall inform the grand jury of its nature and existence. . . . If a failure to comply with the provisions of this section results in substantial prejudice, it shall be grounds for dismissal of the portion of the indictment related to that evidence."

The People claim, without evidence to support the claim, that the prosecution did not have the reports before the grand jury proceeding. Mason disagrees, pointing to a declaration from his counsel, stating "[i]t is my recollection that I provided [the deputy district attorney] with [the investigator's] reports in the morning [of the preliminary hearing] well before calling [the investigator] to testify."

When, as here, a defendant challenges an indictment by petition before trial on the ground the prosecutor withheld critical exculpatory evidence, we will not grant the petition unless "a reasonable probability exists that 'a properly informed jury would have declined to find probable cause to indict had it known of the omitted evidence.' [Citations.]" (*People v. Becerra* (2008) 165 Cal.App.4th 1064, 1070.)

We conclude no properly informed jury would have declined to find probable cause to indict, because the relevance of the evidence was to show that Mason did not intend to burn the forest, and the intent to burn the forest was not an element of the offense. The grand jury was instructed that it did not have to find that Mason intended to

16

burn the forest. As discussed, that instruction was correct because it followed *Atkins* and *In re V.V.*

Additionally, the omitted reports regarded defendant's intent, or lack thereof, to burn the forest were statements about his surprise and remorse over the fire that ensued after he threw the firework into the water. Such evidence was duplicative. The grand jury heard from Anthony Sanchez, an eyewitness to the event, who was unconnected to Mason. Sanchez testified that after Mason threw the firework he was "panicked" and was saying "I'm sorry, I'm sorry." The grand jury heard the recording of Mason's interview with the sheriff's detective. The grand jury saw the apology letter Mason wrote in which he expressed remorse for his carelessness and asked forgiveness for his mistake.

## D. There was Sufficient Evidence of Injury and Destruction of an Inhabited Dwelling

The grand jury was instructed that count one was for arson with great bodily injury. An element of the crime was that the fire caused great bodily injury to another person. Great bodily injury meant "significant or substantial physical injury. It is an injury that is greater than minor or moderate harm." Mason argues the injury to William Meggett, an inmate working as a firefighter, was not significant enough to qualify as great bodily injury. Meggett suffered a fractured forearm when he was hit by a boulder while fighting the fire. He was on pain medication for six months, and at the time of the grand jury proceeding, his arm had still not healed. It was crooked and deformed, and he had limited use of the arm. There was a possibility the doctor would have to re-break the arm if the bones did not grow back correctly.

The emergency room physician who treated Meggett testified that Meggett suffered a fracture to his right forearm. The doctor put a splint on the arm and directed Meggett to see a follow-up physician to treat the injury. The doctor testified Meggett should have had full function of the arm after one month to six weeks, if given appropriate outpatient treatment.

17

While a broken bone may not constitute great bodily injury as a matter of law, "[i]t is common knowledge that a bone fracture is not merely a transitory bodily distress, but a severe and protracted injury which causes significant pain and requires considerable time to heal." (*People v. Johnson* (1980) 104 Cal.App.3d 598, 609.) The determination is a question of fact. (*People v. Escobar* (1992) 3 Cal.4th 740, 750.) As long as there is some information to support the grand jury's determination, and it is not incorrect as a matter of law, we will not inquire as to the sufficiency of the evidence. (*People v. Claflin* (1978) 87 Cal.App.3d 1, 6.)

Mason also argues that the evidence was insufficient to establish that an inhabited dwelling was destroyed, as alleged in count two. The basis of this claim is that the owner of the home that was destroyed testified to the grand jury that he visited the residence twice a month, but the fire captain testified at the preliminary hearing that the owner said he had been to the house within the last couple of years.

A residence is inhabited, even if vacant, if the residents intend to return. (*People v. Jones* (1988) 199 Cal.App.3d 543, 548.) "[I]t is the present intent to use the house as a dwelling which is determinative." (*Ibid*.) There was sufficient evidence before the grand jury that the owner intended to return. The owner testified, "We had every intention of continuing to use it in the same way that we have been using it since it was built in 1976, which was every couple of weekends." Again, as long as there is some information to support the grand jury's determination, we will not inquire as to the sufficiency of the evidence. (*People v. Claflin, supra*, 87 Cal.App.3d 1, 6.)

### III
### There was Probable Cause to Believe That the Forest Fire Was a Highly Probable Consequence of Igniting an Illegal, Aerial Explosive in the Middle of a Dry Forest and Grassland

Mason argues the evidence presented was insufficient to constitute reasonable or probable cause that he committed arson.

An indictment will not be set aside for lack of probable cause " ' "if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.  [Citations.]" ' " *(People v. Uhlemann, supra*, 9 Cal.3d at p. 667.) We must determine whether substantial evidence supports the grand jury's decision to hold Mason to answer the charges.  (*People v. Davis* (2010) 184 Cal.App.4th 305, 311.) It is for the grand jury to weigh evidence and judge credibility, and all presumptions on appeal are in favor of the grand jury's decision.  (*Ibid*.)

Mason claims the evidence was insufficient because it did not show he started the forest fire willingly or on purpose.  The Supreme Court has reiterated that the arson statute does not require such intent.  "In *Atkins,* we held that arson requires only a general criminal intent and that the specific intent to set fire to, burn, or cause to be burned the relevant structure or forest land is not an element of arson."  (*In re V.V.*, *supra*, 51 Cal.4th 1020, 1027.)

Mason also argues it was not objectively reasonable to expect that a fire would start as a result of his actions.  He points to the fact that he told one of the detectives he had previously thrown a firework in the swimming hole without incident.  However, there was other evidence indicating it would have been objectively reasonable to expect a fire to be the direct, natural, and highly probable consequence of lighting an illegal firework and throwing it into the swimming hole.  The witnesses who were present all testified that it was hot and dry on the day in question.  The firework sent sparks up and out in a circle pattern, something Mason would have known if he had thrown a firework in the swimming hole before.  One witness testified he did not think it was smart to set off a firework as Mason did.  Another said he was shocked anyone would bring a firework there in the summer because of the dry brush.  Another witness said he did not understand why anyone would set off a firework in a dry canyon.

19

The expert testified the probability was very high that an illegal firework of the type Mason threw into the water would start a fire. That probability would be even higher in dry, hot conditions with dry brush around.

Mason bought illegal fireworks, designed to shoot flares into the air, and exploded one of them in a swimming hole at the bottom of a narrow, dry, wooded canyon during *extreme* fire conditions. This is sufficient evidence to put a reasonable person on notice of the high probability that sparks from the explosive could ignite the grass or forest surrounding the swimming hole and provide probable cause for the commission of arson.

## DISPOSITION

The petition for writ of prohibition or mandate is denied. The stay issued by this court on November 21, 2013, is vacated upon issuance of the remittitur.

                /s/_____
                Blease, Acting P. J.

I concur:

      /s/_____
      Hull, J.

I concur in the result.

      /s/_____
      Mauro, J.

Blease, Acting P. J., Dissenting.

I authored the opinion of the court because we are bound by *People v. Atkins* (2001) 25 Cal.4th 76 (*Atkins*) and *In re V.V.* (2011) 51 Cal.4th 1020. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Ordinarily I would say no more. But because a judge is "bound [but] not gagged" by the superior law I express my dissenting views here. (*Sample v. Borg* (E.D.Cal. 1987) 675 F.Supp. 574, 578 fn. 13, vacated as moot *Sample v. Borg* (9th Circ. 1989) 870 F.2d 563.)

This case is about the indirect setting fire to forest land. The arson statute sets forth three kinds of proscribed acts. (Pen. Code, § 451.)[1] As *Atkins* recognizes, "the proscribed acts within the statutory definition of arson are to (1) set fire to; (2) burn; or (3) cause to be burned . . . any structure, forest land, or property. (§ 451.)" (*Atkins, supra*, 25 Cal.4th at p. 86.) The first two involve the direct setting fire to or burning of a structure, forest land, or property. The third involves the indirect causing of a structure, forest land, or property *to be* burned (past tense). As to the proscribed act of setting a fire, the "willful and malice requirement ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire; ' "in short, a fire of incendiary origin." ' " (*Id.* at p. 88.) Similarly, section 451 requires that the willful and malicious direct burning of a property must be deliberate and intentional.

*Atkins* distinguishes the indirect causing of a property to be burned. It says the willful and malicious "caus[ing] to be burned" a property means "the act that causes" the property to burn. (*Atkins, supra*, 25 Cal.4th at p. 86; see also *In re V.V., supra*, 51 Cal.4th at p. 1027.) As I will explain, the court thereby splits the mental state for arson in two,

---

[1] A reference to a section is to the Penal Code unless otherwise apparent from the context.

the intentional setting fire to or burning a property and the negligent causing a property to be burned. This is how the grammatical split came about.

In *Atkins* the Court of Appeal reversed the judgment of the trial court that evidence of voluntary intoxication should not have been admitted. The Court of Appeal reasoned that the "intent to set fire to or burn or cause to be burned forest land" is a specific mental state permitting the admission of evidence of voluntary intoxication to show that the defendant lacked the required mental state. (*Atkins, supra*, 25 Cal.4th at p. 81.) The Supreme Court in *Atkins* reversed the Court of Appeal on the ground that, pursuant to former section 22, arson is a general intent crime and for that reason evidence of voluntary intoxication is not admissible. (*Atkins,* at p. 79.)[2]

The Supreme Court could have reversed the Court of Appeal and upheld the judgment of the trial court on the ground the <u>trial court</u> correctly concluded that arson is a general intent crime. (*Atkins, supra*, 25 Cal.4th at p. 81.) The court did not do that. Instead, it took the puzzling, and to my mind unnecessary, course of redefining the singular act of "caus[ing] to be burned" as the undefined and uncodified "*act that causes*" a fire. (*Id.* at p. 86.) The court thereby redefined arson as a strict liability offense. Without more, the "act that causes" a fire is merely the *means* by which the fire was initiated. To fill the void between the means and end -- the fire -- the court inserted an additional element requiring that the fire be the natural and highly probable consequence of the act. (*Id.* at p. 89.) This again redefined arson, this time as a species of negligence. (See § 7, subd. (2).) This will be explained in detail in the Discussion, *post*.

_____

**2**    As relevant here, former section 22, subdivision (b) provided, and section 29.4, subdivision (b) now provides, that "[e]vidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required *specific* intent . . . ."

The last step in the transformation of arson is in *In re V.V.* The court there severed the general-specific intent theory of arson that undergirded *Atkins* from its basis in former section 22. The court applied the *Atkins* redefinition of arson to a case that did not involve evidence of alcohol use. This made clear that the redefinition of arson set forth in *Atkins* does not depend upon *People v. Hood* (1969) 1 Cal.3d 444 (*Hood*). (*In re V.V., supra*, 51 Cal.4th at pp. 1027-1029.) The general-specific doctrine is employed in *Hood* solely to classify a criminal offense as general or specific for the purpose of determining the admissibility of the voluntary use of alcohol pursuant to former section 22.

My earlier opinions, *In re Stonewall F.* (1989) 208 Cal.App.3d 1054 (*Stonewall F.*) and *People v. Fabris* (1995) 31 Cal.App.4th 685 (*Fabris*), discussed the history and statutory requirements for arson at length and held that the mens rea for arson is the malicious intention to do any of the acts proscribed by section 451, that is, to "willfully and maliciously . . . set[] fire to or burn[] or cause[] to be burned . . . [a] structure, forest land, or property." It is clear from the language of section 451 that the terms willful and malicious apply to the setting fire to, burning of, or causing to be burned, a structure, forest land, or property and not the <u>means</u> (act) by which the burning is initiated.

The grand jury was instructed on the basis of the standard arson instruction (CALCRIM No. 1515) together with an amendment that provided that petitioner did not have to intend to burn the forest land. The jury was further instructed with CALCRIM No. 240 that causally linked the act that causes the fire with the resulting fire by means of a natural and probable consequences test. All this will be explained in detail in the Discussion, *post*.

The jury was thereby misinstructed on the statutory definition of arson, based on a misreading and misapplication of the general-specific doctrine of *Hood, supra*, 1 Cal.3d 444. It substituted a negligence standard in lieu of the mental state of intention required by section 451. The mistake was predicated upon a misreading of *Hood*.

3

It is clear on the facts of this case that Mason did not intend to set fire to forest land, that at most he was reckless and therefore liable for unlawful burning (§ 452), and that the grand jury was wrongly instructed pursuant to *Atkins* and *In re V.V.* that arson does not require an intent to burn a forest land.

All of this is detailed in *Stonewall F., supra*, 208 Cal.App.3d 1054 and *People v. Fabris, supra*, 31 Cal.App.4th 685 which are premised on a simple application of "willfully" to the proscribed acts defined in section 451 (as further defined in the related statutory definitions). Thus, " 'willfully' " is defined as the "intent with which an act is done," the act being an act proscribed by statute. (§ 7, subd. (1).)[3] The proscribed acts made criminal by section 451 are correctly defined in *Atkins* as "to (1) set fire to; (2) burn; or (3) cause to be burned, any structure, forest land, or property." (*Atkins*, *supra*, 25 Cal.4th at p. 86.) Thus, applying the statutory definition of " 'willfully' " (§ 7, subd. (1)) to the proscribed acts results in "the intent with which" (*ibid*.) the subject property is set fire to or burned or caused to be burned, to wit, the intent to do any of these things.[4]

Neither *Atkins* or *In re V.V.* take this simple grammatical step. They implicitly define the proscribed act to "cause[] to be burned," (§ 451) without reference to the property that is the subject matter of the burning. This redefined the act is the <u>means</u> by which the causal sequence is initiated that causes the burning of a subject property. This is expressed as the "act that causes" a property to burn and is the act to which the court applies the scienter of willful and malicious. (*Atkins, supra*, 25 Cal.4th at p. 86; see also *In re V.V., supra*, 51 Cal.4th at p. 1027.)

---

[3]    The definition does <u>not</u> include the further intent "to injure another" (§ 7, subd. (1)), and thus rules out a further intent. Accordingly, it must be classified under *Hood* as a general intent crime.

[4]    Notwithstanding, *Stonewall F*. and *Fabris* were disapproved without analysis in *Atkins* "[t]o the extent that [they] . . . are inconsistent with [its] opinion." (*Atkins, supra*, 25 Cal.4th at p. 90, fn. 5.)

4

In this manner, the burning of forest land in *Atkins* was caused by the <u>act</u> of burning weeds. The burning of the grassland in *In re V.V.* was caused by the <u>act</u> of throwing firecrackers into the grass, and the burning of a school in *Stonewall F.* was caused by the <u>act</u> of burning leaves in a schoolyard. Here the burning of the forest land was caused by setting off the firework that defendant threw into the swimming hole. None of these (causal) "acts" is proscribed by section 451.

**DISCUSSION**

I
*Atkins* Misreads to Cause to be Burned
(One of the Acts Proscribed by Section 451)
As the Unproscribed *Act That Causes* to be Burned

The judicial construction of a criminal statute requires a font of authority that derives from the language of the statute. "Although the Penal Code commands us to construe its provisions 'according to the fair import of their terms, with a view to effect its objects and to promote justice' (Pen. Code, § 4), it is clear the courts cannot go so far as to create an offense by enlarging a statute, by inserting or deleting words, or by giving the terms used false or unusual meanings. (*People* v. *Baker* (1968) 69 Cal.2d 44, 50.) Penal statutes will not be made to reach beyond their plain intent; they include only those offenses coming clearly within the import of their language. (*De Mille* v. *American Fed. of Radio Artists* (1947) 31 Cal.2d 139, 156.) Indeed, 'Constructive crimes -- crimes built up by courts with the aid of inference, implication, and strained interpretation -- are repugnant to the spirit and letter of English and American criminal law.' (*Ex parte McNulty* (1888) 77 Cal. 164, 168.)" (*Keeler v. Superior Court* (1970) 2 Cal.3d 619, 632.)

The immediate difficulty with *Atkins's* construction of the statutory element "causes to be burned" as the "the act that causes" a property to burn is that such an act is

5

<u>not</u> an element of section 451.  (*Atkins, supra*, 25 Cal.4th at p. 86; § 451)[5]  *Atkins* fails to note that the acts, which it correctly lists as proscribed (*Atkins,* at p. 86.), are not the causal <u>means</u> by which the act of burning is brought about.  Rather, they are the completed and unitary acts of setting fire to or burning or causing to be burned a structure, forest land, or property.[6]

     If the "act that causes" a fire is not contained in section 451 as an *element* of the crime of arson, where did it come from?  The answer is somewhat more involved.

II<br>
*Hood* Applies to Acts Proscribed by Statute;<br>
An Act That Causes a Fire is Not a Proscribed Act

     For this statutory reason evidence of alcohol use is admissible only, as section 29.4 says, in a "*specific intent*" case.  (§ 29.4, subd. (b), italics added.)  Such evidence is not admissible in a general intent case.  *Hood, supra*, 1 Cal.3d 444, upon which *Atkins* relies, employed the general-specific intent doctrine solely to determine (i.e., to classify) whether an offense is the kind for which evidence of voluntary alcohol use is admissible. *Hood* says: "When the [statutory] <u>definition</u> of a crime consists of only the description of a particular act . . . we ask whether the defendant intended to do the <u>proscribed</u> act.  This intention is deemed to be a general criminal intent.  When the definition refers to

---

[5]   The phrase is used in section 451, subdivisions (a) and (b) to increase the penalties for an arson "that causes" an inhabited structure or property to burn (§ 451, subd. (b)) or an arson "that causes" bodily injury (§ 451, subd. (a)).

[6]   The role of a proscribed act can be described as the analogue of the distinction between material and evidentiary facts in the law of summary judgments.  "Material facts are facts to be proved to establish a cause of action.  . . .  Evidentiary facts are facts by which the material facts are proved."  (*Carlsen v. Koivumak*i (2014) 227 Cal.App.4th 879, 884, fn.6, citations omitted.)  The act of causing to be burned a structure, forest land, or property is a material (proscribed) fact to be proved.  The *means* by which that is done is evidence whether the act of causing to be burned is willful.

6

defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent." (*Id.* at pp. 456-457, underscoring added.)[7]

"As this passage says, the criteria of specific and general intent apply only to the statutory 'definition of a crime . . . .' . . . It is apparent that to determine the category into which to place the intended act, the proscribed *act* must first be determined by examination of the language of the statute defining the offense." (*Fabris, supra*, 31 Cal.App.4th at p. 697.) *Atkins* at first applies this prescription to arson. "[T]he proscribed acts within the *statutory definition* of arson are (1) to set fire to; (2) burn; or (3) cause to be burned any structure, forest land, or property." (*Atkins, supra*, 25 Cal.4th at p. 86, italics added.)

*Atkins* then turns a wrong corner. It accurately quotes the *Hood* language (*Atkins, supra*, 25 Cal.4th at p. 82), then fundamentally misquotes it by reference to a footnote in *People v. Davis* (1995) 10 Cal.4th 463, 518-519, footnote 15, a death penalty case. *Davis* misquotes *Hood* as saying: " 'A crime is characterized as a "general intent" crime when the required mental state entails only an intent to do the *act that causes* the harm; a crime is characterized as a "specific intent" crime when the required mental state entails an intent to cause the resulting harm.' " (*Atkins*, at p. 86.)

In this manner *Atkins* created a new element of arson, an act not contained in the language of section 451. It redefined the <u>proscribed act</u> of "caus[ing] to be burned" as the "act that" causes the burning. (*Atkins, supra*, 25 Cal.4th at p. 86.) It premised this reconstruction on the third of the acts actually proscribed in section 451, to "cause[] to be burned." *Atkins* says: "This interpretation is manifest from the fact that the statute is

---

[7]    The issue in *Atkins* was evidentiary, whether evidence of the voluntary use of alcohol was admissible as a defense to the intent to burn the forest land. The statutory authority for admission of the evidence is found in section 29.4 (former § 22). (*Hood, supra*, 1 Cal.3d at p. 457.)

7

implicated if a person 'causes to be burned . . . any structure, forest land, or property.' "
(*Atkins*, at p. 86.) *Atkins* thus reads "causes to be burned" as the "<u>act that causes</u>" the
burning.

The misquotation completely changes the meaning of section 451. The "act that
causes" the harm becomes a proscribed act -- the <u>means </u>by which the burning is caused --
and the burning, the act actually proscribed by section 451, becomes the harm that is
caused by the act of causing. (*Atkins*, *supra*, 25 Cal.4th at p. 86.) *Atkins* concludes:
"[T]he intent requirement for arson [thus] fits within the *Hood* definition of general
intent, i.e., the description of the proscribed act fails to refer to an intent to do a further
act or achieve a future consequence." (*Ibid.*) In this fashion *Atkins* has performed major
grammatical surgery. It has used a misquotation of the general-specific intent
requirements of *Hood*, which is employed in *Hood* solely to classify the crimes for which
evidence of alcohol use may be admitted, as a template by which to <u>redefine</u> the crime
itself. It applies the statutory scienter for arson -- the willful mental state -- to the *means*
by which the burning is brought about. The mental state then becomes the willful means
which initiates the chain of causation leading to a burning of a relevant structure and that
requires a causal element linking the means to the result.[8]

It is a puzzle why *Atkins* chose this linguistic route to the classification of arson as
a general intent crime since section 451 is a general intent crime on its face. *Hood*
defines a general intent as an intent to do a statutorily proscribed act A <u>without the intent</u>
to do a further act or consequence B. (*Hood, supra*, 1 Cal.3d at pp. 456-457.) Since the
acts proscribed by section 451 are all acts of burning a structure, forest land, or property,

---

[8]    *Atkins* says: "Thus, there must be a general intent to willfully commit the act of
setting on fire under such circumstances that the direct, natural, and highly probable
consequences would be the burning of the relevant structure or property." (*Atkins, supra*,
25 Cal.4th at p. 89.)

applying *Hood* to section 451 shows "[t]here is no reference . . . to an *intent* to do a further act or achieve a consequence beyond the [proscribed] 'acts' [of burning] there defined." (*Fabris*, *supra*, 31 Cal.App.4th at p. 697.) For this reason, applying *Hood* to the statutory definition of arson simply shows that arson is a general intent offense, the intent to "set[] fire to or burn[] or cause[] to be burned" a structure, forest land, or property without an intent to do or cause any further act or consequence. (§ 451)[9] Further, " 'willfully' " is defined to "appl[y] to the intent with which an act is done or omitted" and not to a further intent to injure. (§ 7, subd. (1).)

III
The History of the Arson Law Shows the Mens Rea of Section 451
To Be the Intentional Burning of a Property

The history of the arson statutes shows that the Legislature <u>repealed</u> the former statutory requirement that a defendant, in intentionally setting a fire to a property, must further intend to destroy the property burned. At the same time it retained the proscribed act of intentional burning and the harm (scorching or charring) that defines burning. (*People v. Haggerty* (1873) 46 Cal. 354 (*Haggerty*).) By that change the definition of arson retained the mens rea as the intentional burning of a structure without the further intent to burn down or destroy the structure.

Since in this form arson constituted, and still constitutes, the singular act of intentional burning of a structure without an intent to achieve a further consequence, it was and is properly classified as a general intent offense. Because *Atkins* created a new proscribed act -- the means (act) by which the property is caused to be burned -- it turned the existing proscribed act of burning into the consequence of an act nowhere defined in section 451 (the means).

---

[9]  A further "intent to violate law, or to injure another, or to acquire any advantage" is ruled out by the definition of " 'willfully' " (§ 7, subd. (1)) unless "otherwise apparent from the [statutory] context." (§ 7.)

9

*Atkins* does recite the correct history of the arson law as support for the claim that arson is a general intent crime. *Atkins* says that initially arson was defined as " 'the willful and malicious burning of a building, with [the specific] intent to destroy it.' [Citations.] . . . [¶] When arson was recodified in 1929, [the prior] section . . . was repealed [citation], and the new primary arson statutes [citations] dropped the specific intent requirement, leaving 'willfully and maliciously' as the only mental element." (*Atkins, supra*, 25 Cal.4th at p. 87.) *Atkins* further says that when the arson statute was recodified in 1979, "[t]he . . . language in [the] former sections . . . 'Any person who wilfully and maliciously sets fire to or burns or causes to be burned . . . ,' [(a defined property)] was retained . . . ." (*Ibid*.) As a consequence of this legislative history the terms "burn" and cause to be "burned" in section 451 have the same meaning as the term "burning" in the 1872 statute, and that we know is not equivalent to the destruction of the property burned.

Arson has been classified as a general intent crime since the statute was recodified in 1929. (*Atkins, supra*, 25 Cal.4th p. 87.) "Language that typically denotes specific intent crimes, such as 'with the intent' to achieve or 'for the purpose of' achieving some *further* act, is absent from section 451." (*Id.* at p. 86, italics added.) Since there is no specific intent language in the current definition of arson there is no reason to read the language to bar a specific intent and no reason to read "causes to be burned" as specific intent language. *Atkins* redefinition of "causes to be burned" as the "act that causes" the burning is what creates the specific intent problem. As a consequence the Supreme Court, by its construction, created a nonexistent specific intent problem which it then unnecessarily resolved by interpreting "causes to be burned" as the act that causes the burning.

This is made abundantly clear by the history of the arson statutes set out in *Stonewall F*. The law of 1850 provided, in terms that exist in the present section 451, "that it was arson for any person to 'willfully and maliciously burn, or cause to be

10

burned' specified kinds of (habitable) structures.  (Stats. 1850, ch. 99, § 56, pp. 234-235; see Bolton, *Arson in California* (1949) 22 So.Cal.L.Rev. 221; Bolton, *Arson in California: Part II* (1962) 35 So.Cal.L.Rev. 375.)" (*Stonewall F., supra*, 208 Cal.App.3d at p. 1062)  At common law the word " ' "burn" ' " meant " 'to consume by fire . . . [a]nd the burning of any part, however small, completes the offense, the same as of the whole.' " (*Haggerty, supra*, 46 Cal. at p. 355)  In *Haggerty* "[it] was proved that a wooden partition in the building, and annexed to it, was charred, and in one place burned through.  This was a sufficient burning to constitute arson . . . ." (*People v. Simpson* (1875) 50 Cal. 304, 306, citing *Haggerty, supra*, 46 Cal. 354.)

*Atkins* had no reason to construct a general intent crime out of section 451 since it already was a general intent crime.

IV
The Harm of Scorching or Charring a Property Is Integral
To the Proscribed Acts of Setting Fire to or Burning
Or Causing to Be Burned a Property

The *Atkins* court seems confused about the harm to which section 451 is directed, which explains why it is confused about what constitutes the consequence of a proscribed act.  A specific intent refers to an <u>intent</u> to cause a further consequence of a proscribed act.  But *Atkins* implicitly identifies the harms proscribed by section 451 as the consequence of the act of initiating a causal chain leading to the setting of a fire.  Such an initiating act is nowhere defined as proscribed in the section.  It is true that the acts identified as proscribed acts in section 451 do include a harm integral to the act, to wit scorching or charring a property.  But that harm is not the harm identified in section 451 as the <u>consequence</u> of a proscribed act.  It is a harm <u>integral</u> to the proscribed act and as such must be the object of the defendant's intent.

11

V
The Phrase "That Causes" is Used in the Arson Statute
Only to Aggravate the Penalties for Arson

The significant absence of the language "that causes" from the definition of arson is shown by the contrasting use of "that causes" to define the conditions for enhancing the penalties for specified harms caused by an arson. Thus, section 451 enhances the penalties for an "[a]rson that causes" great bodily injury (§ 451, subd. (a)) and for an "[a]rson that causes" an inhabited structure to burn (§ 451, subd. (b)). To similarly extend "that causes" language to the definition of arson, without more, rewrites section 451 to make the perpetrator of the arson strictly liable for the act (means) that initiated the causal chain leading to the burning of a structure.

VI
To Remedy the Strict Liability Consequence of Its Redefinition,
*Atkins* Imported a Negligence Test

The *Atkins* court's misreading left section 451 without a statutory mens rea applicable to the consequence of the "act that causes" the burning of the structure, forest land, or property. Without a mens rea, the causal relation between act and consequence is one of strict liability, another way of stating the absence of a mens rea.

The redefinition of arson as a strict liability offense is intolerable as a matter of policy since arson is outside the range of acceptable strict liability offenses. " '[W]hile strict-liability offenses are not unknown to the criminal law and do not invariably offend constitutional requirements [citation], the limited circumstances in which Congress has created and this Court has recognized such offenses, [citations], attest to their generally disfavored status.' [Citation.]" (*People v. Simon* (1995) 9 Cal.4th 493, 519-520.)

Apparently, in an effort to remedy the strict liability consequence of its definition of arson, *Atkins* inserted a new element between the act (means) of causation and the consequent burning of a relevant property, to wit, the "general criminal intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and

12

highly probable consequences would be the burning of the relevant structure or property." (*Atkins*, *supra*, 25 Cal.4th at p. 89; see § 20.)

There are two things wrong with the construction. First, the "act of setting on fire" a structure, forest land, or property, the act actually proscribed by section 451, is not the means by which the fire is caused. Second, the "direct, natural, and highly probable consequences" test is not contained in the language of section 451.

The only case directly cited as support for the test in *Atkins* is *People v. Fry* (1993) 19 Cal.App.4th 1334, 1339 (*Fry*). *Atkins* correctly describes *Fry* as a proximate cause case. "[T]he defendant in *Fry* did not directly set fire to the relevant structure [a carport]. In *Fry,* the defendant, while drunk and angry at his girlfriend, set fire to four vehicles, and the fire in one vehicle damaged the carport it was parked in. He was convicted of one count of arson of a structure and four counts of arson of a vehicle. Because there was substantial evidence that he willfully and maliciously set fire to a car, and his conduct actually and proximately caused the carport to be burned, *Fry* held there was substantial evidence to support the conviction for arson of a structure." (*Atkins, supra,* 25 Cal.4th at p. 83, fn. 3.)

In *Fry's* usage the natural and probable consequences doctrine does not define a mens rea. It defines the causal relationship between the completed act of arson of a vehicle and the consequent burning of the carport in which the vehicle was parked. It does not define a mental state. The difference between causation and a mental state lies in the function performed by the natural and probable consequences doctrine. If it is used to establish culpability it is a negligence doctrine. If it is used to refer to the further consequences of culpable conduct, it is a causal doctrine. Thus, in *Fry* the arson occurred in the setting fire to the cars in the carport and that caused the fire in the carport. It did not establish a further arson, contrary to *Atkins*, but merely caused the fire to the carport within which the burned cars were located.

13

By contrast the phrase "direct, natural, and highly probable consequences," as used by *Atkins*, defines the mens rea of unreasonable risk taking, the key element in negligence, as defined in section 7, subdivision (2). " '[N]egligence' . . . import[s] a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns." Thus, from a causal doctrine *Atkins* has derived a negligence doctrine. This is the form in which the grand jury was instructed as a modification of the standard arson instruction. A natural and probable consequence of an act is a form of negligence where it is used to assign culpability for risk. Negligence is defined in the Penal Code (§ 7, subd. (2)) and applies throughout the Penal Code "unless otherwise apparent from the context." (§ 7.)[10] Since the "natural, and highly probable consequences" test In *Atkins* contains the core definition of negligence in section 7, subdivision (2), it functions as a species of negligence, an objective form of risk taking. In this manner *Atkins* has shifted the act made culpable from the intentional act of causing a fire to specified property to the negligent act of initiating a fire. This rendered arson the preferred criminal charge since negligence, measured objectively, is manifestly easier to prove than recklessness, measured subjectively.

## CONCLUSION

The public will not understand that the single offense of arson has been split into two offenses, measured by their scienter and that the result is the grammatical transformation of the indirect burning of a property from an intent crime to a negligence

---

[10]  "Every assessment of negligence implies a standard by which the conduct of the individual is judged." (Williams, Criminal Law (2d. ed. 1961) § 36, p. 101.) The standard, as set forth in section 7, subdivision (2). Subdivision (2) provides: "The words 'neglect,' 'negligence,' 'negligent,' and 'negligently' import a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns."

14

offense. Nor have the cases. (See *Fabris*, *supra*, 31 Cal.App.4th at pp. 696-697.) To the public, arson is the intentional, incendiary act of causing a fire to property. But *Atkins* and *In re V.V.* treat the perpetrator of an indirect arson as an arsonist no matter that the fire was started negligently. (*Atkins, supra,* 25 Cal.4th at p. 88.) The *Atkins* court's construction of section 451, which does not appear in the language of section 451, radically transforms the mental state for arson from the intentional burning of a relevant structure to the negligent burning of the structure, thereby making the proof of arson, the offense carrying the greater penalty, easier than the proof of unlawful burning.

_/s/_____

Blease, Acting P. J.

15